## Owens v. Congo.

*George S. Wolbert,* for plaintiff; *B. D. Oliensis,* for defendant.

ALESSANDRONI, J., July 29, 1929.—The plaintiff filed a bill in equity praying for specific performance of a contract to convey the premises situate at No. 812 South 15th Street, Philadelphia, and averring complete performance of all the covenants in the agreement on the part of the plaintiff. It was also averred that the defendant had breached the covenants of the agreement by failing to deliver possession of the premises by an assignment of the leases and had refused to execute and deliver the deed. The defendant filed an answer denying compliance by the plaintiff with the covenants of the agreement, and averring a willingness and readiness at the time fixed for settlement on the part of the defendant to comply with the agreement. The case proceeded to trial and the Chancellor found that on Aug. 10, 1926, the defendant, through her agent, agreed to sell the plaintiff, through his agent, the premises located at No. 812 South 15th Street, Philadelphia, for the price of $10,500; $500 to be paid on the signing of the agreement and the balance to be paid in cash at the time of settlement, which was to be on or before Nov. 10, 1926. Time was to be of the essence of the contract. Formal tender of deed and tender of money was waived. The agreement provided that the premises were to be delivered by an assignment of the leases or a delivery of the key. On Nov. 9, 1926, the parties met at the Real Estate Title and Trust

Company for settlement, and the settlement sheet was approved by the parties, showing a balance of $4635.83 due the defendant. The plaintiff had obtained a loan from a building and loan association, which was deposited with the Real Estate Title and Trust Company as part of the purchase price, together with the plaintiff's check for $3466.09, which sum, together with the deposit money, constituted the full purchase price. There was contradicting testimony as to whether a delivery of the leases was made, and the Chancellor found that no such delivery had been made. There was ample evidence to support this finding of fact. There was also a question as to whether the plaintiff's check was good—it appearing that sufficient funds were on deposit, but that some of the items were uncollected. When the settlement clerk called the plaintiff's bank, he was informed that the check would not be honored until Nov. 13th or 15th. The plaintiff's check was honored on Nov. 13th. In the meantime, the defendant, having failed to produce the leases, demanded the return of her deed when she found that she could not procure the money. She received her deed on Nov. 13th. The plaintiff made demands for performance, the purchase money still being in the hands of the settlement company, but the defendant refused to convey. The Chancellor found that the plaintiff was ready and willing to perform, but the defendant was guilty of a breach of contract by failing to deliver possession of the property by an assignment of the leases or the delivery of the key.

The defendant filed exceptions to the Chancellor's findings of fact and conclusions of law. These exceptions, however, raise only one question: "Was the plaintiff guilty of a breach of contract because the check which he deposited with the settlement company was not collectible until Nov. 13th, which is three days later than the time limit fixed in the agreement of sale? Defendant contends that, because of this fact, the plaintiff was not ready and willing to perform on or before Nov. 10, 1926, and, therefore, is precluded from securing specific performance. The Chancellor properly found as a finding of fact that the defendant was guilty of a breach of contract by failing to deliver possession by an assignment of the leases or by a delivery of the key. Even conceding that the plaintiff was in default because his check was not collectible until Nov. 13th, it clearly appears that the defendant was also in default by not being ready to deliver possession in accordance with the terms of the agreement. As stated in Paralka v. Grummel, 282 Pa. 235: "Conceding plaintiffs were in default in not procuring their mortgage in time, there was also default on part of defendants in not arranging to secure possession of the property from the tenant that delivery of the premises might be made at the time fixed for settlement. This brings the case within the rule that a party cannot insist upon specific performance at the time stipulated if he has been the cause of the delay, or is himself in default, and if a tender of performance is made by the other party within a reasonable time, specific performance will be decreed: Irvin v. Bleakley, 67 Pa. 24, 28; Vankirk v. Patterson, 201 Pa. 90, 95; Loughney v. Quigley, 279 Pa. 396, 400, 401, and cases cited."

The rule as here stated clearly applies to the facts in the case at bar. The defendant was in default and a tender of performance was made by the plaintiff within a reasonable time. In fact, three days after the time stipulated. Specific performance, therefore, was rightly decreed.

A decree of specific performance is not a matter of course, but rests in the sound discretion of the chancellor: Ginsburg v. Collins, 84 Pa. Superior Ct. 221. As stated in Pringle v. Smith, 289 Pa. 356: "The complaint of delay is without merit; much of it was caused by defendant's own default."

Under the rules established by these cases, the plaintiff was entitled to specific performance. We find no error in law in the Chancellor's adjudication.

And now, to wit, July 29, 1929, all of the fourteen exceptions of defendant to Chancellor's adjudication are dismissed, and counsel is directed to prepare and submit a form of final decree.